Ray Wayne BEAVERS, Terry Chaffin, Oscar Jenkins, James Dollar, Richard L. Johnson, Charles Harmon, as representatives of a class described and composed of all male employees, former employees, and prospective employees, Plaintiffs–Appellants,

Rodney Craig Rosetta, Paul Franklin Coupland, Roger Dale Miller, Intervenors–Plaintiffs–Appellants,

v.

AMERICAN CAST IRON PIPE COMPANY, Defendant–Appellee.

Oscar JENKINS and James Dollar, as representatives of a class described and composed of all male employees, former employees, and prospective employees, Plaintiffs–Appellants,

v.

AMERICAN CAST IRON PIPE COMPANY, Defendant–Appellee.

Ray Wayne BEAVERS, Terry Chaffin, Oscar Jenkins, James Dollar, Richard L. Johnson, Charles Harmon, as representatives of a class described and composed of all male employees, former employees, and prospective employees, Plaintiffs,

Rodney Craig Rosetta, Roger Dale Miller and Paul Franklin Coupland, Plaintiffs–Intervenors–Appellants,

v.

AMERICAN CAST IRON PIPE COMPANY, Defendant–Appellee.

Oscar JENKINS and James Dollar, as representatives of a class described and composed of all male employees, former employees, and prospective employees, Plaintiffs,

Rodney Craig Rosetta, Roger Dale Miller and Paul Franklin Coupland, Plaintiffs–Intervenors–Appellants,

v.

AMERICAN CAST IRON PIPE COMPANY, Defendant–Appellee.

Nos. 90–7900, 91–7087.

United States Court of Appeals, Eleventh Circuit.

Oct. 19, 1992.

Ann K. Norton, Robert A. Wiggins, Jr., Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, Ala., for appellants.

Donald R. Livingston, Gwendolyn Y. Reams, Vincent J. Blackwood, Samuel A. Marcosson, E.E.O.C., Office of General Counsel, Washington, D.C., for amicus E.E.O.C.

F.A. Flowers, III, Sue Ann R. Willis, Robert G. Tate, J. Fredric Ingram, Mark M. Lawson, Burr & Forman, Birmingham, Ala., for American Cast Iron Pipe Co.

Before EDMONDSON and COX, Circuit Judges, and MERHIGE *, Senior District Judge.

COX, Circuit Judge:

The plaintiffs in these consolidated class actions represent the past, present, and future male employees of American Cast Iron Pipe Co. (ACIPCO). They challenge ACIPCO's policy of denying medical and dental insurance coverage to the children of ACIPCO employees if those children do not reside full time with their employee-parent. The district court granted summary judgment in favor of ACIPCO. For the reasons discussed below, we affirm in part, reverse in part, vacate in part, and remand.

## I. FACTS AND PROCEDURAL HISTORY

Since 1962, ACIPCO has limited the medical and dental insurance benefits it provides to its employees' dependents. In order for the children of an employee to qualify for coverage, ACIPCO requires that the children reside full time with their employee-parent. Dr. Edwin Bradley, a statistics expert, stated in an affidavit that 397 of the 400 ACIPCO employees who have been adversely affected by this policy since 1982 were men.

Ray Beavers, an ACIPCO employee, was divorced from his wife in 1975. As a result, Beavers's children no longer resided with their father and lost their ACIPCO medical and dental insurance. Beavers's children continued to be ineligible for insurance coverage on May 23, 1983, when Beavers filed a charge with the Equal Employment Opportunity Commission (EEOC). Beavers charged that ACIPCO's policy violated Title VII of the Civil Rights Act of 1964 because it had a disparate impact on male employees, who are historically less likely to have custody of their children in the event of divorce.

In 1986, Beavers filed a class action against ACIPCO in the Northern District of Alabama on behalf of "all male employees, former employees and prospective employees of the defendant, American Cast Iron Pipe Company." The complaint alleges that ACIPCO's policy is sexually discriminatory in violation of Title VII. Other male ACIPCO employees moved to intervene as additional named plaintiffs, some claiming that ACIPCO's policy was not only sexually discriminatory but also racially discriminatory. Beavers and the named plaintiffs also assert individual claims under the Equal Pay Act. After the district court refused to certify the class and denied the motions to intervene, this court reversed and remanded. *Beavers v. American Cast Iron Pipe Co.*, 852 F.2d 527 (11th Cir.1988).

On remand, the district court certified the class action, and the intervenors were added as named plaintiffs. ACIPCO subsequently moved for summary judgment. The district court granted summary judgment dismissing with prejudice the individual and class Title VII claims on the ground that none of the plaintiffs had filed a timely charge with the EEOC. *Beavers v. American Cast Iron Pipe Co.*, 751 F.Supp. 956 (N.D.Ala.1990). The court held that Title VII's 180–day limitations period began to run for each plaintiff as soon as he knew that his children were no longer covered under ACIPCO's policy. *Id.* at 963. The district court also granted summary judgment dismissing the six named plaintiffs' Equal Pay Act claims on the ground that the plaintiffs had failed to demonstrate that they were compensated less than female employees who were performing equal work. *Id.* at 968. The plaintiffs then appealed to this court.[1]

## II. ISSUES ON APPEAL

1. Whether an EEOC charge challenging the current application of the allegedly discriminatory employment policy was timely even though it was filed more than 180 days after the policy was first imposed.

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. The district court also rejected the plaintiffs' claim that ACIPCO's policy violated ERISA. The plaintiffs, however, do not argue that this was error.

2. Whether the fact that lesser-skilled female employees receive greater compensation than male employees is sufficient to demonstrate a prima facie case under the Equal Pay Act.

## III. CONTENTIONS OF THE PARTIES

The plaintiffs contend that ACIPCO's policy of limiting insurance coverage to those children who reside full time with their employee-parent has a continuous disparate impact in violation of Title VII. The violation is not simply a single event which occurs when the policy is first applied to the affected employee. Rather, ACIPCO's policy has an unlawful discriminatory effect each and every day a male employee is denied insurance coverage for his nonresident children.

Even though Ray Beavers was subject to ACIPCO's discriminatory policy as early as 1975, the charge he filed with the EEOC in 1983 was timely as to the application of that policy within the 180 days preceding the charge. Moreover, even if Beavers's charge were deemed to be untimely, the other named plaintiffs and class members relied upon Beavers's suit to protect their rights. Because ACIPCO did not challenge the timeliness of Beavers's charge until 1990, it should be equitably estopped from asserting the limitations period against the other plaintiffs. Also, the 180–day period for the plaintiffs to file charges with the EEOC should be considered tolled while Beavers's suit was pending. Given this toll, the subsequent EEOC charges were clearly filed within the limitations period.

The plaintiffs also object to the district court's grant of summary judgment in favor of ACIPCO on the Equal Pay Act claim. First, James Dollar has demonstrated that he is paid less than comparable female employees despite having greater skills and responsibility. Second, ACIPCO treats all of its employees the same for the purpose of providing insurance coverage, thereby satisfying the statute's equal work requirement. Finally, the district court erred in failing to notify class members of their right to opt into the Equal Pay Act suit.

ACIPCO argues that it was entitled to summary judgment because none of the named plaintiffs filed a timely charge with the EEOC. In order to be timely, a charge must be filed within 180 days of the alleged violation. Assuming ACIPCO's insurance coverage limitation was contrary to Title VII, the violation occurred when the plaintiffs first knew that the policy adversely affected them. Any "continuing" effect of the policy is simply the result of their failure to file a timely charge. Furthermore, because Beavers's charge was not timely, the remaining plaintiffs may not rely upon his lawsuit to toll the application to them of the 180–day limitations period.

With respect to the Equal Pay Act claim, ACIPCO maintains that the plaintiffs have failed to establish a prima facie case because none of the named plaintiffs can identify a female employee who is paid more for performing equal work with equal skills, effort, and responsibility under similar working conditions. The fact that ACIPCO treats all of its employees the same for the purpose of insurance coverage does not eliminate the statute's equal work requirement. Finally, the district court did not abuse its discretion in refusing to notify class members of their right to opt into the Equal Pay Act action more than four years after the suit was filed and just shortly before trial.

The United States Equal Employment Opportunity Commission was given permission to file an amicus curiae brief. Like the plaintiffs, the EEOC argues that each application of ACIPCO's policy regarding insurance coverage for its employees' children constituted an independent violation of Title VII. Accordingly, the initial charge filed with the EEOC in 1983 was timely even though the policy was first implemented in 1962. Also, the charges filed by other named plaintiffs were timely since the pending lawsuit tolled the 180–day limitations period. The EEOC did not express an opinion regarding the other issues raised by the parties.

## IV. STANDARD OF REVIEW

 District court orders granting summary judgment are reviewed de novo.

*See, e.g., Tackitt v. Prudential Ins. Co.,* 758 F.2d 1572, 1574 (11th Cir.1985).

## V. DISCUSSION

### A. *Title VII Claims*

The threshold question is whether Beavers filed a timely charge with the EEOC. In order to be timely, the charge must have been filed within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). It is undisputed that Beavers failed to file a charge within 180 days of first becoming subject to ACIPCO's allegedly discriminatory policy of limiting insurance coverage to children who reside full time with their employee-parent. The issue, therefore, is whether ACIPCO's policy constitutes a "continuing violation" of Title VII. If it does, then Beavers's charge was timely with respect to the application of that policy within the preceding 180 days. If, on the other hand, ACIPCO's policy was not a continuing violation but rather merely a single isolated act, then Beavers's charge was untimely because it was not filed within 180 days of the discriminatory event.

■ The standard for determining whether an employment practice constitutes a continuing violation was set forth in *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241 (5th Cir.1980).[2] In *Gonzalez,* the plaintiff alleged that Firestone's policy of awarding job opportunities on the basis of unvalidated standardized-test scores had a disparate impact upon Spanish-surnamed employees. Firestone argued that Gonzalez's claim was barred because he had failed to file an EEOC charge within the limitations period after the allegedly discriminatory policy had been applied to deny him a promotion. The court disagreed. *Id.* at 249.

Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice. However, where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e–5(e) that the plaintiff file his charge of discrimination within 180 days of the discriminatory act.

*Id.* (citations omitted). In determining whether ACIPCO's policy constitutes a continuing violation, therefore, we must distinguish between the "present consequence of a one-time violation," which does not extend the limitations period, and the "continuation of the violation into the present," which does. *See Webb v. Indiana National Bank,* 931 F.2d 434, 438 (7th Cir.1991).

The Supreme Court's decisions in *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), and *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), illustrate this fundamental distinction. In *Bazemore,* the plaintiffs were black employees of the North Carolina Agricultural Extension Service. Prior to 1965, the Extension Service was divided into two parallel branches: a white branch and a "Negro branch." The black employees of the "Negro branch" were paid significantly less than their counterparts in the white branch. When the Extension Service was integrated, the salary disparities between black and white personnel were not completely eliminated. *Bazemore,* 478 U.S. at 390–91, 106 S.Ct. at 3004.

The black employees filed suit against the Extension Service, claiming *inter alia* that the salary disparities violated Title VII. The Extension Service maintained that, because the disparities were solely the result of discrimination which occurred prior to Title VII's effective date, it should not be required to affirmatively eliminate them. The Supreme Court squarely rejected this argument, holding that the Exten-

**2.** The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit ren-dered prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

sion Service's perpetuation of the salary disparities constituted a continuing violation of Title VII. "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII." *Id.* at 395–96, 106 S.Ct. at 3006.

The Supreme Court reached the opposite conclusion in *Ricks*. Ricks was a black Liberian who joined the faculty of Delaware State College in 1970. In 1973, the faculty committee on promotions recommended that Ricks be denied tenure. Following his request for reconsideration, the committee again recommended that Ricks not receive tenure. The college's board of trustees formally denied tenure on March 14, 1974. Pursuant to the college's policy, junior faculty members were given a one-year "terminal" contract after being denied tenure, after which their employment with the college ended. Ricks signed his terminal contract without objection on September 4, 1974. *Ricks*, 449 U.S. at 252–54, 101 S.Ct. at 501–02.

Ricks then filed a charge with the EEOC on April 4, 1975, alleging that he had been discriminated against on the basis of national origin. In the subsequent lawsuit, the college contended that Ricks's charge was untimely, arguing that the essence of Ricks's claim was that he was improperly denied tenure and that he had failed to file his charge within 180 days of that denial. The district court agreed and dismissed the suit. The Third Circuit Court of Appeals, however, reversed. It agreed with the district court that Ricks's primary claim was that he was improperly denied tenure. Nevertheless, the court concluded that the limitations period for filing the charge with the EEOC did not begin to run until Ricks's employment was terminated by the college at the end of his final contract. *Id.* at 254–56, 101 S.Ct. at 502–03.

The Supreme Court reversed. It noted that 42 U.S.C. § 2000e–5(e) requires that

an EEOC charge be brought within 180 days of the "alleged unlawful practice." [3] To determine the timeliness of Ricks's charge, the Court sought to identify the particular practice which Ricks claimed was discriminatory. Like the district court and court of appeals, the Supreme Court concluded that Ricks's primary objection was that he had been denied tenure on the basis of national origin discrimination. The Court rejected Ricks's argument that the limitations period should not begin to run until the end of his final contract under a "continuing violation" theory.

> It appears that termination of employment at Delaware State is a delayed, but inevitable, consequence of the denial of tenure. In order for the limitations period to commence with the date of discharge, Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure.

*Id.* at 257–58, 101 S.Ct. at 504.

As these cases demonstrate, the Supreme Court clearly recognizes the distinction this court has drawn between the present effects of a one-time violation—as in *Ricks*—and the continuation of the violation into the present—as in *Bazemore*. Other circuits have also adopted this distinction. *See, e.g., Webb v. Indiana National Bank*, 931 F.2d 434, 438 (7th Cir. 1991); *Association Against Discrimination in Employment, Inc. v. Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981); *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 219 (3d Cir.1983); *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 925 n. 3 (9th Cir.1982).

█ Applying this test to the facts of the case at bar, we conclude that ACIPCO's policy of denying insurance coverage to children who do not reside with their employee-parent, *if it violates Title VII*, con-

---

**3.** Under certain circumstances, not relevant here, the filing period for an EEOC charge is

300 days after the alleged unlawful employment practice. *See* 42 U.S.C. 2000e–5(e)(1).

stitutes a continuing violation.[4] The lack of coverage is not, as suggested by ACIPCO, merely the residual effect of a single discriminatory act occurring in 1962, 1975, or some other discrete point in time. Rather, it is the direct result of on-going policy actively maintained by ACIPCO. If Beavers were to regain custody of his children, they would once again be eligible for medical and dental benefits. If, however, custody were lost for a second time, the children—*through the continued application of ACIPCO's policy*—would again be without insurance coverage. ACIPCO's policy, if it violates Title VII, is clearly a "continuing violation into the present." To paraphrase *Bazemore*, we hold that each week in which divorced men are denied insurance coverage for their nonresident children while similarly situated divorced women, who are apparently far more likely to have custody of their children, receive such coverage constitutes a wrong arguably actionable under Title VII. *See Bazemore*, 478 U.S. at 395–96, 106 S.Ct. at 3006. Accordingly, Beavers's EEOC charge was timely as to any application of the policy within the preceding 180 days.

We note that the district court initially reached this same conclusion, stating that it was satisfied "that Mr. Beavers' EEOC charge was timely and kept the door open for a class." *Beavers*, 751 F.Supp. at 959–60. The court, however, subsequently reversed itself in light of the Supreme Court's decision in *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). "[Our] prior opinion may have been correct when issued. It is not correct following *Lorance* and it would be error for this court to adhere to it in the face of controlling precedent to the contrary." *Beavers*, 751 F.Supp. at 960.

In *Lorance*, the plaintiffs challenged the seniority system in a collective bargaining agreement between the AFL–CIO and AT & T. At AT & T's manufacturing plant, hourly workers were eligible for promotion to more highly skilled and higher paying "tester" positions. Before 1979, seniority of testers was based upon the total years at the plant, both as a tester and as an hourly worker. In 1979, the collective bargaining agreement was modified so that a tester's seniority was based solely on the number of years spent as a tester. The plaintiffs contend that the purpose of this modification was to protect the incumbent testers, who were almost exclusively male, from the increasing number of women qualifying for tester positions during the 1970s. The allegedly discriminatory effect of this system was not actually felt until the economic downturn of 1982, when the testers with less seniority—mostly females—were selected for demotion. *Lorance*, 490 U.S. at 901–03, 109 S.Ct. at 2263–64.

After filing a charge with the EEOC, the plaintiffs sued in federal court, claiming that they were demoted on the basis of their sex in violation of Title VII. The Supreme Court conceded that the plaintiffs' allegations normally would have been sufficient to state a cause of action for discrimination under the disparate impact theory.[5] Seniority systems, however, are given special protection under Title VII. *See* 42 U.S.C. § 2000e–2(h). Employees may not challenge the effects of a seniority system under the disparate impact theory. "Absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 82, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977).

---

**4.** The issue of whether ACIPCO's policy actually violates Title VII is not before us in this appeal.

**5.** There are two types of employment discrimination claims. "A Title VII plaintiff can make a case by proving either disparate treatment or disparate impact. To recover for disparate treatment, the employee must prove that the employer intentionally discriminated against her. On the other hand, a plaintiff can recover

under the disparate impact theory by proving that some employment practice that is facially neutral in its treatment of similarly situated employees has a disproportionately adverse effect on those employees who are a member of some protected class. Proof of intent to discriminate is not required." *Mitchell v. Jefferson County Board of Education*, 936 F.2d 539, 546 (11th Cir.1991).

The plaintiffs did not allege that AT & T's seniority system was currently being operated in an intentionally discriminatory manner. The thrust of their complaint was that the system was adopted for the discriminatory purpose of protecting male testers over female testers. The Supreme Court concluded that, because the plaintiffs had failed to file a timely charge with the EEOC after the adoption of the seniority system, their action was barred by the limitations period. The Court rejected their claim that the demotions which resulted from the operation of the seniority system were part of a "continuing violation." Relying in part on its earlier decision in *Delaware State College v. Ricks*, the Court held that "petitioners in the present case have asserted a claim that is wholly dependent on discriminatory conduct occurring well outside the period of limitations and cannot complain of a continuing violation." *Lorance*, 490 U.S. at 908, 109 S.Ct. at 2267. Like *Ricks*, the demotions were simply the delayed consequence of a single discriminatory act which had occurred long before an EEOC charge was filed.

The district court somehow concluded that *Lorance* overruled this court's earlier precedents regarding continuing violations under Title VII and created a new rule to the effect that no challenge to a facially neutral policy may be brought more than 180 days after the policy is first implemented. *Beavers*, 751 F.Supp. at 961. We disagree.

First, the Supreme Court made it exceedingly clear—from its statement of jurisdiction to its conclusion—that its holding in *Lorance* was limited to seniority systems and did not apply to all Title VII actions. *See, e.g., Lorance*, 490 U.S. at 903, 109 S.Ct. at 2264 (stating that "[w]e granted certiorari ... to resolve a Circuit conflict on when the statute of limitations period begins to run in a lawsuit arising out of a seniority system not alleged to be discriminatory on its face or as presently applied"); *id.* at 911, 109 S.Ct. at 2268–69 (summarizing the holding as "when a seniority system is nondiscriminatory in form and application, it is the allegedly discriminatory

*adoption* which triggers the limitations period") (emphasis in original).

Second, *Lorance* does not prohibit challenges to facially neutral employment policies—other than those related to seniority systems—which are brought more than 180 days after the policies are adopted if the policies continue to have a discriminatory disparate impact. Indeed, *Lorance* itself contradicts such an interpretation. The Supreme Court explicitly recognized that the plaintiffs would have had a valid cause of action for disparate impact discrimination based upon the current effect of the seniority system, even though the system had been adopted years earlier, but for the fact that Title VII limits challenges to seniority systems to claims of intentional discrimination. *Id.* at 904, 109 S.Ct. at 2265.

Third, there is nothing particularly novel in the *Lorance* decision. It is merely an application of the traditional distinction between the "present consequence of a one-time violation and the continuation of the violation into the present," which, as demonstrated above, the Supreme Court clearly recognized in *Bazemore* and *Ricks*. While the court rejected the plaintiffs' claim that the operation of the seniority system constituted a continuing violation, it certainly did not reject continuing violation analysis itself.

Our interpretation of *Lorance* is strongly supported by decisions of other circuits. For example, the Fifth Circuit explained in *Hendrix v. Yazoo City*, 911 F.2d 1102 (5th Cir.1990), that:

> As *Lorance* makes clear, the distinction does not turn on the type of discrimination, but on whether the practice at issue is part of, or a repetition of, a past discriminatory act, in which case there is a continuing violation, or whether it is facially neutral, simply giving effect to prior discrimination, in which case there is no continuing violation.

*Id.* at 1104. *See also Webb v. Indiana National Bank*, 931 F.2d 434, 438 (7th Cir.1991) (noting that the distinction "between the present consequence of a one-time violation and the continuation of the violation into the present ... is preserved

in *Lorance*"); *cf. Barrow v. New Orleans Steamship Assoc.*, 932 F.2d 473 (5th Cir. 1991) (applying *Lorance* to an ADEA challenge to a *seniority system*); *Chambers v. Parco Foods, Inc.*, 935 F.2d 902 (7th Cir. 1991) (holding *Lorance* applicable to a *seniority system* implemented as part of a collective bargaining agreement).

While we do not rely upon the Civil Rights Act of 1991 or its legislative history to support our conclusion, we do note that they are consistent with our interpretation. Among other things, the Civil Rights Act of 1991 was designed to "overrule" the Supreme Court's decision in *Lorance. See generally* H.R.Rep. No. 102–40(I), 102d Cong., 1st Sess. 14, *reprinted in* 1991 U.S.C.C.A.N. 549, 552; H.R.Rep. No. 102–40(II), 102d Cong., 1st Sess. 1–3, *reprinted in* 1991 U.S.C.C.A.N. 694–95. Specifically, Congress amended 42 U.S.C. § 2000e–5(e) to reverse *Lorance*'s holding with respect to seniority systems.

> For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

42 U.S.C. § 2000e–5(e)(2).[6]

The narrow scope of this amendment evidences Congress's view that *Lorance* was limited to the context of seniority systems. The legislative history reinforces this conclusion. Congress, in fact, criticized the few decisions which attempted to apply *Lorance* beyond seniority systems. H.R.Rep. No. 102–40(I), 102d Cong., 1st

Sess. 61–62, *reprinted in* 1991 U.S.C.C.A.N. 549, 599–600; H.R.Rep. No. 102–40(II), 102d Cong., 1st Sess. 23, *reprinted in* 1991 U.S.C.C.A.N. 716–17 (citing the district court's decision in the case at bar as one of those extending *Lorance* ). Congress also implicitly endorsed "continuing violation" analysis, stating that the Civil Rights Act of 1991 left this doctrine unchanged. H.R.Rep. No. 102–40(I), 102d Cong., 1st Sess. 62, *reprinted in* 1991 U.S.C.C.A.N. 600; H.R.Rep. No. 102–40(II), 102d Cong., 1st Sess. 23–24, *reprinted in* 1991 U.S.C.C.A.N. 716–17.

For the reasons discussed above, we conclude that the Supreme Court's decision in *Lorance* is entirely consistent with this court's traditional continuing violation analysis. We hold, therefore, that the charge Beavers filed with the EEOC was timely as to any application of ACIPCO's allegedly discriminatory insurance benefits policy within the preceding 180 days. Accordingly, we reverse the district court's grant of summary judgment in favor of ACIPCO on the claims of sexual and racial discrimination under the disparate impact theory.[7]

It should be noted the plaintiffs also claim that ACIPCO's decision to adopt the restrictions on insurance benefits was the result of intentional racial discrimination. The district court's opinion did not explicitly address this issue. We decline to address it here, preferring that the district court address it in the first instance. *See Osborne v. Folmar*, 735 F.2d 1316, 1318 (11th Cir.1984) (remanding issue not considered by the district court). Accordingly, we vacate the district court's grant of summary judgment in favor of ACIPCO on the intentional racial discrimination claim and remand.

### B. *Equal Pay Act Claim*

■ In a related argument, the named plaintiffs contend that ACIPCO's policy re-

---

6. We need not decide whether the Civil Rights Act of 1991 should be applied retroactively because this case does not involve a seniority system.

7. Because Beavers properly filed an EEOC charge before bringing suit, we need not address whether the charges filed by the other named plaintiffs or class members were timely

as to the disparate impact claims. *See, e.g., Wheeler v. American Home Products Corp.*, 563 F.2d 1233, 1239 (5th Cir.1977) (stating that once a timely administrative complaint has been filed by one member of the class all others who were affected by the same practice are entitled to recover).

stricting insurance benefits also violates the Equal Pay Act. The district court granted summary judgment in favor of ACIPCO on the individual Equal Pay Act claims on the ground that the plaintiffs could not establish a prima facie case. We agree. In order to make out a prima facie case under the Equal Pay Act, the plaintiffs must show that their "employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)); *see also Price v. Lockheed Space Operations Co.,* 856 F.2d 1503 (11th Cir.1988).

■ The plaintiffs make three arguments in opposition to the grant of summary judgment. First, they claim that James Dollar has established a prima facie case because he is paid less than comparable female employees despite having greater skills and responsibility. Dollar has worked for ACIPCO as a production machinist, radial drill operator, and a machinist apprentice. The female employees to whom Dollar compares himself include data entry operators, receptionists, estimators, stenographer/clerks, and the truckload/carload coordinator. The record clearly establishes that none of these positions involve equal work, skill, effort, responsibility, or working conditions. Accordingly, Dollar has failed to establish a prima facie case under the Equal Pay Act.

■ The plaintiffs are essentially requesting this court to apply the theory of comparable worth. *See* Appellants' Brief at 51–52. They argue that ACIPCO should not pay highly skilled employees like Dollar less than they pay employees whose jobs involve less skill, effort, or responsibility. Such an argument is better directed at legislative bodies. This court has no authority to create a social-utility hierarchy of positions at ACIPCO and then to ensure, for example, that production machinists are paid more than receptionists. The Equal Pay Act only prohibits employers from paying employees of one sex less than employees of another sex for "equal work."

■ Second, the plaintiffs argue (and ACIPCO apparently concedes) that ACIPCO treats the jobs of all employees as equal for the purpose of providing medical and dental insurance coverage. Because ACIPCO does not distinguish among different positions in distributing this benefit, the plaintiffs contend that they should be deemed to have satisfied the equal skill, effort, and responsibility requirement of a prima facie case. We disagree. The scope of the Equal Pay Act is much more limited than that of Title VII. *See County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). Again, it only applies when members of one sex are being paid less than members of the opposite sex for "equal work." This court is not aware of any authority which would allow it to simply ignore that statutory requirement. Because none of the plaintiffs have demonstrated that they are paid less than female employees performing the same work, they have not established a prima facie case under the Equal Pay Act. Of course, as noted above, the plaintiffs may be able to establish a violation of Title VII, which is not expressly limited to cases involving equal work. *Id.* at 181, 101 S.Ct. at 2254.

Finally, the plaintiffs assert that the district court erred in granting summary judgment on the Equal Pay Act claim without first notifying class members of their right to opt into that action. Unlike normal class actions, plaintiffs in an Equal Pay Act suit must affirmatively join the litigation. "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

■ We begin by noting that the plaintiffs' attorney—not the district court—is generally responsible for advising class members of their rights and seeing that they are exercised in a timely manner. The Supreme Court, however, has held that district courts may, in the exercise of their

discretion, assist in the notification of prospective plaintiffs under 29 U.S.C. § 216(b). *Hoffman–La Roche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). We will reverse a district court's refusal to assist in the notification process only if the refusal constitutes an abuse of discretion.

■■■ In its opinion granting summary judgment, the district court stated that:

> In brief, counsel for the plaintiffs argue that the court should now, four years into the case, after the pretrial conference and shortly before the scheduled trial, certify a class under the EPA and afford putative class members an opportunity to opt into the action for the purposes of the EPA claim. Given the plaintiffs' long and extended opportunities to "take care of business" and to the extent it has discretion to do so, the court declines to prolong this agony further.

*Beavers,* 751 F.Supp. at 966 n. 10. In light of the plaintiffs' delay, we hold that the district court did not abuse its discretion in refusing to notify class members of their right to join the plaintiffs' Equal Pay Act suit.

## VI. CONCLUSION

We REVERSE the district court's grant of summary judgment in favor of ACIPCO on the claims of sexual and racial discrimination under the disparate impact theory.

As to the claim of intentional racial discrimination, we decline to address the limitations issue because the district court did not specifically address it. Accordingly, we VACATE the district court's grant of summary judgment in favor of ACIPCO on the intentional racial discrimination claim and REMAND.

With respect to the Equal Pay Act claims, the district court's grant of summary judgment in favor of ACIPCO is AFFIRMED.

The case is REMANDED to the district court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; and REMANDED.