**Geraltine H. CLARK, Plaintiff,**

v.

**CITY OF MACON, GEORGIA,
et al., Defendants.**

**Civ. A. No. 93–172–4–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 22, 1994.

U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). These two cases addressed the particular legal questions posed by the Court.

Joseph Calhoun Nelson, III, Athens, GA, for plaintiff.

Wallace Warren Plowden, Jr., William T. Prescott, Macon, GA, and James A. Mendelsohn, Birmingham, AL, for defendants.

## ORDER

OWENS, Chief Judge.

Defendants have moved for summary judgment on all claims. The court has considered the facts, summarized below, in the light most favorable to the plaintiff. After careful consideration of the arguments of counsel, the evidence presented, and the relevant statutory and case law, the court issues the following order.

## I. FACTS

Geraltine H. Clark ("Plaintiff" or "Clark") was employed by the City of Macon ("the City") in a Secretarial I position at the Macon Municipal Airport in June 1986. She worked in the office of Aviation Director Rex Elder ("Elder") along with Emily Minshew ("Minshew") who served as Office Administrator. Plaintiff complains that Minshew acted unprofessionally towards her since the start of her employment and that Elder treated Minshew more favorably than plaintiff and ignored Minshew's harassing behavior.

Beginning in April 1991, plaintiff alleges the hostility towards her heightened when Elders shouted at her and told her that he was tired of her attitude. On May 1, 1991, plaintiff was arrested by authorities after Elders accused her of vandalizing his office. Following this incident, plaintiff met with members of the airport administration and informed them of the perceived discrimination and misuse of city property. Plaintiff made a formal police report concerning the misuse of city property on May 6, 1991.[1]

Elder allegedly threatened plaintiff with retribution for her public statements. Throughout May 1991, Clark complains of several harassing incidents for which Elders is responsible, such as telling her how to properly answer the telephone, restricting her from eating her lunch in a secured area

---

1. Ms. Clark told police that city maintenance personnel worked on the homes of Mr. Elder and Vic Lord, Operations Superintendent, and that Elder was aware of employee theft by a maintenance worker.

of the airport, having city employees police her office, and giving her a false counseling statement.

The harassment apparently subsided until January 9, 1992, when Elders shouted at plaintiff for typographical errors in a report submitted to the Federal Aviation Administration ("FAA"). Plaintiff maintains that she was not to blame for the error. Following this confrontation, plaintiff contacted the Employee Assistance Program Counselor who arranged for plaintiff to be admitted to Charter Lake Hospital for depression. She was released from Charter Lake in late February 1992, but maintains that she was unable to return to work with Elder.

The City next heard from plaintiff in July after the City Attorney's Office requested documentation of her medical status. Plaintiff's doctor confirmed that plaintiff's condition had not sufficiently improved and that he could not anticipate when she would be able to return to work. Mr. Benjamin Hubbard ("Hubbard"), Director of Personnel for the City, met with plaintiff in July and offered her a Secretarial I position in another department. Plaintiff asked for time to consider the offer, but did not respond.

By letter of August 3, 1992, Mr. Elder recommended to Hubbard that plaintiff be terminated. Plaintiff submitted a request for leave of absence on August 12, 1992, and shortly thereafter submitted a letter from her psychiatrist verifying her continued inability to work at the airport. Elder denied the requested leave of absence and instructed plaintiff to return to her normal duties on September 2, 1992, and that failure to do so would be considered a voluntary separation from her position with the city. Plaintiff did not report for work.

## II. SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In assessing whether the movant has met this burden, the court must view the evidence and draw all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright,* 718 F.2d 1538, 1543 (11th Cir. 1983). When the non-moving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial; merely stating that the non-moving party cannot meet its burden at trial is not sufficient. *See Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute that precludes the entry of summary judgment. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Clark,* 929 F.2d at 608. A mere scintilla of evidence is insufficient to overcome summary judgment; a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court notes that "[i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987), *quoting Thornbrough v. Columbus and Greenville R.R.,* 760 F.2d 633, 640 (5th Cir.

1985); *Beard v. Annis,* 730 F.2d 741, 743 (11th Cir.1984).

## III.  DISCUSSION

### A.  TITLE VII CLAIM

#### 1.  Timeliness of EEOC Charge

Before addressing the merits of plaintiff's Title VII claims, the court must first consider to what extent these claims are timely. Claims under Title VII can only be made for adverse employment actions which occurred within 180 days of the filing of an EEOC charge. *United Airlines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).  Plaintiff filed her EEOC charge on December 16, 1992; however her allegations involve conduct which occurred as early as May 1991 until September 1992.  While the termination occurred within 180 days of her EEOC charge, all other alleged incidents can only be brought within the 180–day period if they are seen as continuing violations.

In *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792 (11th Cir.1992), the Eleventh Circuit Court of Appeals held that "[w]here an employee charges an employer with continuously maintaining any illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." *Id.* at 796 (*quoting Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980)). In contrast, "where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee," the act is not seen as continuing. *Id.*

■ The Fifth Circuit has established guidelines for determining whether a violation should be viewed as continuing.[2]  *See Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983).  Courts should consider (1) the subject matter, whether the acts involve similar types of discrimination; (2) the frequency, whether the acts are iso-

lated incidents; and (3) the degree of permanence, is the act likely to trigger the employee's awareness of and duty to assert her rights.  *Berry,* 715 F.2d at 981.

■ A consideration of those factors leads the court to conclude that plaintiff's allegations are discrete incidents which occurred sporadically over a period of seventeen months, often separated by considerable periods of time.  The different treatment allegedly began in May and June 1991, followed by an argument in January 1992, and the termination in September 1992.  The earlier incidents are separate in time and character from the timely filed discharge claim.  Consequently, they can not be viewed as continuing violations of Title VII and were not timely presented to the EEOC.  Defendants' motion for summary judgment on plaintiff's Title VII claims for racial harassment and a racially hostile environment is **GRANTED.**[3]

#### 2.  Substantive Claims under Title VII

■ Plaintiff has brought her Title VII action against Elder in his individual capacity.  Title VII actions are not appropriately brought against employers or agents in their individual capacities, rather Title VII relief can be obtained from the employer in his official capacity.  *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *Rolin v. Escambia,* 752 F.Supp. 1020, 1024 (S.D.Ala. 1990).  Hence, plaintiff's Title VII claims against defendant Rex Elder in his individual capacity are **DISMISSED.**

■ The Title VII claims against Mr. Elder in his official capacity should likewise be dismissed because plaintiff did not name him in her EEOC charge.  *Bell v. Crackin Good Bakers,* 777 F.2d 1497, 1504 (11th Cir.1985). Section 2000e–5(f)(1) of Title 42 provides that upon compliance with certain procedures "a civil action may be brought against the respondent named in the charge" previously filed with the EEOC.  The requirement that the plaintiff name the Title VII defendant in the EEOC charge ensures (1) that the defen-

---

**2.** The court suggested that the three factors are relevant but not exhaustive.

**3.** Having found that the claims of racial harassment and hostile environment were not timely

brought before the EEOC, the court will not address defendants' argument that plaintiff's complaint exceeds the scope of her EEOC charge.

dant is notified early on of the discrimination claim allowing him an opportunity to preserve evidence that could be useful in his defense; and (2) that the EEOC can include all relevant parties in its investigation and conciliation efforts. Under certain circumstances, the failure to name a Title VII defendant in the EEOC charge can be excused; however, plaintiff has not demonstrated such reasons. In sum, plaintiff's Title VII claims are properly filed against the City of Macon, but should be DISMISSED against Rex Elder.

■ Plaintiff asserts that she has a claim under Title VII for retaliation. Title VII prohibits discrimination against an employee who has opposed any practice prohibited under Title VII. 42 U.S.C. § 2000e–3. This section does not prevent retaliation for protected speech on matters of general public concern. The crucial difference is whether the speech is protected by the First Amendment or Title VII.

■ First, plaintiff has not alleged in her complaint that defendants retaliated against her after she opposed employment discrimination. *See* Amended Complaint ¶¶ 15, 18. Second, retaliation was not mentioned in plaintiff's EEOC complaint nor was it likely to grow out of the EEOC investigation of the charge. *Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir.1970). The rationale for this limitation is that Congress wanted the EEOC to have an opportunity to investigate and attempt conciliation of all claims before litigation was brought. *See Selman v. Kendall/Hunt Publishing Co.*, 20 FEP Cases 1712, 1713 (N.D.Ga.1979) (core of Title VII is private settlement and elimination of unfair practices without litigation). Thus, raising a particular claim at the administrative level is a condition precedent to filing suit on the claim. *See Babrocky v. Jewel Food Company*, 773 F.2d 857, 864 (7th Cir.1985).

Plaintiff's reliance on *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988), is misplaced because in that case the retaliation occurred after the EEOC charge had been filed. The court reasoned that requiring plaintiff to file an additional EEOC charge was unreasonable. In contrast to *Baker*, Ms. Clark could have alleged retaliation at the time she filed her EEOC charge.

■ The claim of racially discriminatory discharge under Title VII remains pending against the City of Macon and must be analyzed using the standards set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In a Title VII disparate treatment action, the ultimate question is whether the defendant intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Intentional discrimination is an issue of fact. *Pullman–Standard v. Swint*, 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789–90, 72 L.Ed.2d 66 (1982).

■ Because direct evidence of discrimination is difficult to produce, the courts use a three-part procedure to analyze circumstantial evidence of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. First, the plaintiff must present a prima facie case of intentional discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was discharged; and (4) after her dismissal, the position remained open and the employer continued to seek applications with the complainant's qualifications. *Id.* "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981).

■ Defendants argue that plaintiff has failed to prove a prima facie case of discrimination because she voluntarily left her job with the City. Were the trier of fact to determine that plaintiff voluntarily left her position with the City, plaintiff would not have a prima facie case and judgment for defendants would be warranted. However, whether defendants terminated plaintiff or whether she simply failed to return to work is an issue upon which reasonable minds could differ and is not appropriate for summary judgment. Viewing the evidence in the

light most favorable to plaintiff, she has established a prima facie case of discriminatory termination.

■ Once a prima facie case has been presented, defendants are charged with the burden of articulating a legitimate, nondiscriminatory reason for discharging the plaintiff. Importantly, the burden of persuasion remains with the plaintiff. The defendant need only raise "a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981). The Eleventh Circuit has described the defendant's burden as "exceedingly light." *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir.1983). Defendants have produced evidence that Ms. Clark left her job voluntarily and that any termination was justified due to the excessive and unexcused absences.

■ Because defendants have articulated a legitimate, nondiscriminatory reason for discharging plaintiff, the presumption of discrimination "drops out of the picture." *St. Mary's Honor Center v. Hicks*, 509 U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 418 (1993). Once the defendants satisfy their burden of production, the trier of fact is faced with the ultimate question, whether plaintiff has proven that defendants terminated her because of her race rather than the proffered reasons. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094–95, *quoted in St. Mary's Honor Center*, 509 U.S. at ——, 113 S.Ct. at 2749, 125 L.Ed.2d at 418. Plaintiff has sufficiently challenged Elder's motive to create a jury issue. Therefore, defendants' motion for summary judgment on plaintiff's Title VII termination claim must be DENIED.

■ With respect to damages, the court notes that 42 U.S.C. § 1981a(b)(1) does not allow plaintiff to recover punitive damages for violation of Title VII by a government agency or subdivision. Hence, plaintiff can not recover punitive damages under § 1981a.

## B. CIVIL RIGHTS CLAIMS

### 1. Statute of Limitations

■ Plaintiff's claims under the civil rights laws are partially precluded due to the delay in filing suit. The statute of limitations for claims under §§ 1981 and 1983 is borrowed from the most applicable state statute of limitations. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–61, 107 S.Ct. 2617, 2620–21, 96 L.Ed.2d 572 (1987). In Georgia, the two-year limitations statute for personal injury suits is applicable to civil rights claims. *See* O.C.G.A. § 9–3–33 (1982). *Evans v. Meadow Steel Products, Inc.*, 572 F.Supp. 250, 253 (N.D.Ga.1983). The complaint was filed on June 3, 1993, which would bar suit for any actions occurring prior to June 3, 1991. Defendants' motion for summary judgment is **GRANTED** as to any § 1981 or § 1983 claim which arose prior to June 3, 1991.

### 2. Retroactivity of Amended § 1981

■ Another obstacle to plaintiff's claims is the nonretroactivity of amended § 1981. The Civil Rights Act of 1991 became effective November 21, 1991, and expanded the reach of § 1981. Section 1981 protections now apply to the entire employment context. The term "make and enforce contracts" includes the terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b) (Supp. 1994). The Supreme Court recently held that the amendments to § 1981 should not be applied retroactively. *Rivers v. Roadway Express, Inc.*, —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). *See also Thomas v. Kroger Co.*, 24 F.3d 147 (11th Cir.1994). Therefore, under § 1981, plaintiff can pursue only those incidents of termination, harassment, and hostile environment which occurred after November 21, 1991.

### 3. Merits of § 1981 Claims

■ The same substantive analysis applies to § 1981 claims as under Title VII. Plaintiff complains of defendant Elder yelling at her in January 1992 and the September 1992 discharge. A reasonable trier of fact could disbelieve defendant's reason and infer discrimination; hence summary judgment on plaintiff's § 1981 claims of discriminatory

termination, harassment, and hostile environment is **DENIED.**

### 4. Merits of § 1983 Claim

█ Plaintiff asserts a claim under § 1983 alleging defendants terminated her in retaliation for protected speech. In order to prevail, plaintiff must establish that (1) the expression addressed a matter of public concern; (2) the employee's first amendment interests outweigh the interests of the employer in preserving the efficiency of government services; and (3) the employee's conduct was a substantial or motivating factor in the government's discharge decision.[4] *Martinez v. City of Opa–Locka*, 971 F.2d 708, 712 (11th Cir.1992); *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir.1989).

█ Whether the plaintiff's speech addressed a matter of public concern depends upon the content, form and context of the statement considered in light of the entire record. *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Ms. Clark first contacted airport administration and then local police concerning misuse of and theft of city property. This speech was in the public interest and did not conflict with the efficient operation of government services.

█ Once the plaintiff has established a prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have terminated the employee regardless of the protected speech. *Martinez*, 971 F.2d at 712. Whether Clark's protected speech was a motivating factor in Elder's decision to terminate her is a jury question. Accordingly, defendant's motion for summary judgment on plaintiff's § 1983 claim is **DENIED.**

### 5. Damages

█ Liability for damages under 42 U.S.C. § 1981 or 42 U.S.C. § 1983 can not attach on the basis of a supervisory position alone. *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to prevail on her claims against the City, plaintiff must show that the constitutional violation occurred as a direct result of a policy or custom of the City. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 735, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598, 627 (1989); *Monell*, 436 U.S. 658, 98 S.Ct. 2018. Plaintiff has not demonstrated that racial discrimination or interference with protected speech is the policy or custom of the City. Therefore, defendants' motion for summary judgment is **GRANTED** on plaintiff's damage claims under § 1981 and § 1983 against the City of Macon.

█ The civil rights claims remain pending against Mr. Elder in his individual and official capacity as Aviation Director. Mr. Elder is not protected by qualified immunity. Plaintiff can seek both compensatory and punitive damages against defendant Elder individually for her claims under §§ 1981 and 1983.[5] *Smith v. Wade*, 461 U.S. 30, 51–56, 103 S.Ct. 1625, 1637–40, 75 L.Ed.2d 632 (1983).

### C. CONCLUSION

Defendants' motion for summary judgment is **GRANTED** as to plaintiff's Title VII claims of racial harassment, hostile environment, and retaliation. Mr. Elder's motion for summary judgment on all Title VII claims is **GRANTED.** The motion for summary judgment by the City of Macon on plaintiff's Title VII termination claim is **DENIED.**

Defendants' motion for summary judgment is **GRANTED** as to any § 1983 claim which arose prior to June 3, 1991. Defendants' motion for summary judgment is **GRANTED** as to any § 1981 claim which arose prior to

---

4. The court decides the first two prongs of the test as a matter of law. *Martinez*, 971 F.2d at 712.

5. Punitive damages are only recoverable where the defendant acted maliciously. *Beauford v. Sisters of Mercy*, 816 F.2d 1104 (6th Cir.), *cert. denied*, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 217 (1987).

November 21, 1991. Summary judgment is **GRANTED** to the City of Macon on damage claims under § 1981 or § 1983. The motion for summary judgment by the City of Macon and Mr. Elder is **DENIED** as to plaintiff's claims under § 1981 and § 1983.