**James Edward HORTON, Plaintiff,**

v.

**ROCKWELL INTERNATIONAL CORPORATION,**
**Defendant.**

No. C98–0121.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

April 11, 2000.

Michael McDonough, Moyer Bergman, Cedar Rapids, IA, for plaintiff.

Wilford H. Stone, Lynch–Dallas–Smith–Harman, Cedar Rapids, IA, for defendant.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the defendant's January 14, 2000, motion for summary judgment (docket number 21). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Oral argument on the motion was heard March 2, 2000. For the reasons set forth below, the defendant's motion is granted.

### Background

James Edward Horton, a 56–year–old African–American man who lives in Fair Lawn, Ohio, brought this employment discrimination action against Rockwell International Corp., a Delaware corporation with its avionics and communications business unit in Cedar Rapids, Iowa. The plaintiff claims that Rockwell refused to hire him in August 1996, May 1997, and April 1998 because of his age, race, and ethnic or national origin in violation of 42 U.S.C. §§ 1981 and 1983, Title VII, the ADEA, Iowa Code Chapter 216, and the Cedar Rapids Municipal Code §§ 69.06 and 69.10. Also, the plaintiff alleges that Rockwell retaliated against him because Rockwell mistakenly believed the plaintiff had filed a discrimination complaint when, in fact, his ex-wife had filed the complaint.

The plaintiff was recruited by Rockwell in September 1969, and was hired to work in a variety of positions at various Rockwell locations until May 1981 (he worked in the Human Resources Department from 1977 until 1981). Between 1981 and 1989, the plaintiff held human resources jobs at Xerox Corp. of California, Norand Corp. of Cedar Rapids, and Cornell College in Mt. Vernon. From 1989 until 1994, the plaintiff's career was interrupted, and he was receiving Social Security disability benefits for depression. However, by 1994, he was working full-time for Telxon Corp. in Akron, Ohio, earning $125,000 per year. The plaintiff was terminated by Telxon on July 19, 1996.

The plaintiff was married from August 1967 until June 1986 to Elizabeth Horton, also a Rockwell employee. In 1981, Ms. Horton filed a race discrimination claim against Rockwell, settled the claim in 1983, and continued to work there until October 1984. On July 5, 1996, two weeks before he was terminated from his job at Telxon, the plaintiff married Vicki Hudachek who worked at the University of Iowa Hospitals in Iowa City (they were divorced August 31, 1998), and he tried to get work in eastern Iowa.

Sanford Rose and Dave Ally operate an employment search and recruiting firm, Sanford Rose Associates in Akron, Ohio, and have provided placement services for a fee by screening potential applicants for job openings at Rockwell International. Mr. Ally and Mr. Rose have known the plaintiff since the early 1980s. When the search team learned of the plaintiff's interest in returning to eastern Iowa, they sent his resume to Charlene Boardman and Mark Zardus at Rockwell. In 1996 and 1997, Ms. Boardman received the plaintiff's resume, but it did not indicate his name, age, or race. The plaintiff claims he was not hired by Ms. Boardman in 1996 and 1997 because of his age, race and in retaliation for the lawsuit his first wife brought against Rockwell. Ms. Boardman says the plaintiff was eliminated from consideration because his salary was too high—almost twice what Rockwell was paying for the jobs eventually filled with a woman, a Caucasian man, and an African–American man. The plaintiff claims the resume submitted to Rockwell by Mr. Ally

did not contain salary information, and that his resume, on its face, contained 30 years of working experience, making it clear to the potential employer that the applicant was more than 50 years old.

In 1998, Rockwell was looking for a human resources manager and another recruiter, William C. Houze, of La Quinta, California, sent the plaintiff's resume. Mr. Zardus, who also received a resume which gave no indication as to the plaintiff's name, age, race or ethnic origin, claims he rejected the plaintiff's job candidacy because he was looking for a human resources generalist, not an applicant like the plaintiff who had mainly a staffing background. Ultimately, the plaintiff worked for Aironet Wireless Communications, Inc., in Ohio, until February 4, 1998, when he was certified by the Social Security Administration as medically unable to work.

*Summary Judgment*

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir.1987), *cert. denied*, 484 U.S. 1014, 108 S.Ct. 718, 98 L.Ed.2d 668 (1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985), *cert denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) (quoting *Impro Prod., Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987).

In the context of employment discrimination cases, summary judgment should be used sparingly. *Hardin v. Hussmann*, 45 F.3d 262, 264 (8th Cir.1995) (citations omitted). "'Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.'" *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford v. Runyon*, 37 F.3d 1338, 1340 (8th Cir.1994)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987).

*Conclusions of Law*

The plaintiff joins together four claims of discrimination: age, race, national origin and retaliatory failure to hire. These claims grow out of the plaintiff's three attempts to get a job with Rockwell, Cedar Rapids, in August 1996, May 1997 and April 1998. In order to move forward with his claim of employment discrimination, the plaintiff first must establish the prima facie case under Title VII for discriminatory failure to hire. *Caviness v. Nucor–Yamato Steel Co.*, 105 F.3d 1216, 1223 (8th Cir.1997). *See also McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must show that (1) he is a member of a protected class; (2) that he applied and

was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applications from persons with the plaintiff's qualifications. *Id.*

■ In presenting a case based on age discrimination, a plaintiff may either present direct evidence of claimed discrimination or he may make out a case of discrimination under the burden shifting analysis set forth in *McDonnell Douglas. See Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407 (8th Cir.1997). For the prima facie case, the plaintiff must show he (1) belonged to a protected class; (2) he was qualified for the positions for which he applied; (3) he was not hired despite being sufficiently qualified; and (4) the employer filled the position with a person sufficiently younger to permit an inference of age discrimination. *Id.* at 1412.

■ To establish a prima facie case of retaliation, the plaintiff must show participation in a protected activity, subsequent adverse action by the employer, and a causal connection between the two. § 42 U.S.C.2000e–3(a). *See Evans v. Kansas City, Mo., School District*, 65 F.3d 98, 100 (8th Cir.1995) (Jury question to resolve when plaintiff suggests a causal link between her demotion and termination, and her filing an EEOC charge of sexual discrimination while defendants point to poor performance and work-related misconduct.).

Under *McDonnell Douglas*, if the plaintiff produces sufficient evidence from which a reasonable trier of fact could find elements of his prima facie case, the burden of production shifts to the defendant to articulate legitimate, nondiscriminatory reasons for its decision not to hire the plaintiff. Then, if the defendant meets its burden, the plaintiff must produce sufficient evidence from which a reasonable trier of fact could find the defendant's explanation to be a pretext, and the real

reason for its failure to hire the plaintiff was intentional discrimination. "[If] the plaintiff cannot show that reason was pretextual, the defendant is entitled to summary judgment." *Thomas v. St. Luke's Health Systems, Inc.*, 869 F.Supp. 1413, (N.D.Iowa 1994).

■ The plaintiff suggests that the defendant's employment practices consist of continuing violations. Typically, the "continuing violation theory" is advanced in cases where a plaintiff failed to seek administrative review for allegedly discriminatory acts that preceded acts for which administrative review was sought. *See United Air Lines v. Evans*, 431 U.S. 553, 557–58, 97 S.Ct. 1885, 1888–89, 52 L.Ed.2d 571 (1977). The theory permits courts to consider alleged discriminatory acts occurring prior to the 180–day statute of limitations period for Title VII actions if the acts were part of a "continuing pattern" of discrimination.

The standard for determining whether an employment practice constitutes a continuing violation was set forth in *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241 (5th Cir.1980). *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992). The critical distinction in continuing violation analysis is whether the plaintiff's complaint of "the present consequence of a one-time violation, which does not extend the limitations period, [or] the continuation of that violation into the present, which does." *Calloway v. Partners National Health Plans*, 986 F.2d 446, 448 (11th Cir.1993) (quoting *Beavers*, 975 F.2d at 796). Where a continuing violation is found, the plaintiff can recover for any violation for which the statute of limitations has not expired. *Beavers* at 796.

■ The plaintiff in this case attempts to circumnavigate the EEOC filing deadline by arguing that Rockwell's failure to hire the plaintiff is part of a continuing violation which has been recognized as an exception in both Title VII and ADEA cases. Under the exception, a plaintiff

who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997). The continuing violation exception applies where there is evidence of specific discriminatory practices such as the repeated use of discriminatory seniority lists or employment tests. *Id.* Discrete incidents of discrimination that are unrelated to an identifiable policy or practice, on the other hand, "will not ordinarily amount to a continuing violation," unless such incidents are specifically related and are allowed to continue unremedied for "so long as to amount to a discriminatory policy or practice." *Id.* The plaintiff made three separate applications for employment to Rockwell. First, the plaintiff's resume was sent and received at Rockwell on August 24, 1996. That job was ultimately filled by another Rockwell employee, Helena Long, and the company set out to fill Ms. Long's position in the human resources department. Rockwell representatives said the plaintiff's salary of $125,000 was too high to consider his application. Again, in May 1997, the plaintiff's application was not considered because his salary was too high. Finally, in October 1997, Rockwell transferred employee Cheryl Bazzell from her position as Employee Effectiveness Manager, and began looking to fill Ms. Bazzell's job by accepting applications from October 1997 through March 1998. The job was offered to Sherry Lotz, who declined to accept the position. At that time, the job was split from one to two Employee Effectiveness positions, one for the Cedar Rapids location which was filled permanently by Rodrick Dooley, an African–American man, on August 22, 1998; and one for a non-Cedar Rapids location filled by William M. Bull, a Caucasian man, who began working August 17, 1998. Rockwell determined the plaintiff's experi-

ence was mainly in staffing, and Rockwell wanted to hire a human resources generalist at that time.

On October 29, 1997, the plaintiff filed a discrimination complaint with the Iowa Civil Rights Commission (a certified copy was delivered to Rockwell on November 7, 1997). The plaintiff claimed that the date of the most recent or continuing discrimination took place May 27, 1997. Then, on February 16, 1998, Rockwell formally responded to the plaintiff's complaint, again reiterating its non-discriminatory reasons for failing to hire the plaintiff: His salary was too high, and he was not a human resources generalist.

### August 1996

■ The plaintiff's August 1996 refusal-to-hire claim under Title VII § 1981 or the ADEA fails because the Statute of Limitations had run before the complaint was filed. Calculating the deadlines from September 1, 1996, as a date that the plaintiff had notice of any claims, the cutoff date for actionable conduct under the 300–day limitations period contained in Title VII was July 27, 1998. The ADEA limitation period is essentially the same. 29 U.S.C. §§ 626(d)(1) and 633(b). Finally, under § 1981, a two-year statute of limitation applies in Iowa, making September 1, 1998, the last day in which the plaintiff had to file a claim. While the plaintiff filed his administrative charges October 27, 1997; his complaint was not filed until October 8, 1998. Having missed the filing deadline, the claim is forever barred. While the plaintiff wants this court to view these episodes of alleged discriminatory conduct by Rockwell as one continuing violation, they do not qualify. A violation is continuing if it consists of an ongoing pattern or practice of discrimination, rather than an amalgamation of discrete, isolated instances. *Kline v. City of Kansas City, Mo., Fire Dept.*, 175 F.3d 660, 665 (8th Cir. 1999). *See also Rorie v. United Parcel Service Inc.*, 151 F.3d 757, 761 (8th Cir. 1998), quoting *Jenson v. Eveleth Taconite, Co.*, 130 F.3d 1287, 1303 (8th Cir.1997),

**1054**

*cert denied,* 524 U.S. 953, 118 S.Ct. 2370, 141 L.Ed.2d 738 (1998) (emphasis omitted). This court will view these three instances of refusal-to-hire as three separate episodes with four claims each. Accordingly, Rockwell is entitled to summary judgment on any claims concerning the August 1996 refusal to hire because the statute of limitations bars the action.

### May 1997 and April 1998

■ The plaintiff has filed a discrimination claim for Rockwell's refusal to hire him in May 1997 and April 1998. The plaintiff, an African–American man over the age of 50, is a member of a protected group, qualified to perform the human resources jobs Rockwell was attempting to fill. In her deposition, Rockwell's Charlene Boardman described the applicant as over-qualified (Tr. 22–24); she defined overqualified as someone with perhaps too much education or experience who could nevertheless fill the minimum qualifications of the job. Rockwell rejected the plaintiff's application and continued to look for other applicants. Rockwell eventually filled the jobs with other applicants.

Rockwell has offered two explanations for its refusal to hire the plaintiff: (1) In May 1997, that plaintiff's salary ($125,000) was significantly higher than the wages the company was willing to pay to fill the position (under $75,000); and (2) in April 1998, the plaintiff had a staffing background, rather than the human resources generalist the company was seeking. Under the *McDonnell Douglas* framework, the plaintiff attempted to show that the offered explanation for Rockwell's refusal to hire him was a pretext for intentional discrimination. The plaintiff offered evidence—statements made by two headhunters—to rebut Rockwell's non-discriminatory explanation for its refusal to hire the plaintiff.

In his deposition, the plaintiff testified that the headhunter, or job recruiter, David Ally, told him the reason he was not hired at Rockwell was because he "pissed somebody off" (Tr. 30). The plaintiff said Ms. Boardman was the one who conveyed the information to Mr. Ally (Tr. 86). In the fall of 1996, the plaintiff had this conversation with Sanford Rose:

> I approached Sanford after a conversation with Dave Ally in which Dave Ally was saying—told me that "You obviously pissed somebody off at Collins because they want nothing to do with you." So the following day, or following Sunday, I am on the tennis court—or we are walking on the tennis court and I say to Sanford Rose, I say, "Sanford, your buddy just told me some very disturbing news." And he says, "Yeah, they don't like you. You sued those people." And I said—when I was reacting to that I said, "sued?" And before I could even come out with another word, Sanford went on to say, "And you collected." And I said, "Sanford, if that be the case, show me the money." (Tr. 30).

Mr. Rose and Mr. Ally deny making these statements. From Mr. Rose's deposition (Tr. 22):

Q: Did you ever have a conversation with Mr. Horton in which you made a statement to the effect that "Rockwell does not like you, you sued those people and you collected against them?"

A. We had a lot of conversations, but I don't recall that.

From Mr. Ally's deposition (Tr. 43):

Q. Did you ever have a conversation with Charlene Boardman where she told you that the reason Ed was not hired was because someone at Collins thought Ed filed a claim or charge against them and recovered?

A. No.

To allow the plaintiff to rely on the statements he attributes to Mr. Ally and Mr. Rose, and weigh them as evidence in determining whether the plaintiff can go forward with his claim, the court must first determine whether Mr. Ally and Mr. Rose had any special authority to speak to the

plaintiff on behalf of Rockwell. *See American Eagle Insurance Co. v. Thompson*, 85 F.3d 327 (8th Cir.1996). If Mr. Ally and Mr. Rose were independent contractors, their alleged statements are hearsay (under *Rule* 801(c), statements other than one made by the declarant under oath, offered to prove the truth of the matter asserted), and are inadmissible under *Fed.R.Evid.* 801(d)(2)(D). However, if these recruiters were agents of Rockwell, their alleged remarks are not hearsay and are therefore admissible as statements by employees concerning matters within the scope of their employment. To admit a statement under the employee admission exception, a party must establish that the statement was made by an employee of the opposing party during the existence of that employment relationship. *Fed.R.Evid.* 801(d)(2)(D) (1995). Hearsay cannot "bootstrap" itself into admission by asserting that it qualifies as a hearsay exception. *DCS Sanitation Management Inc. v. Occupational Safety and Health Review Commission*, 82 F.3d 812, 814 (8th Cir. 1996) (citing *United States v. Bensinger Co.*, 430 F.2d 584, 593 (8th Cir.1970)).

In determining the relationship between headhunters Mr. Rose and Mr. Ally, and Rockwell, the principal test is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. *American Eagle, supra*, at 329 (In drawing the line between independent contractor and servant, we look a the totality of the circumstances, and the extent of control [that the employer exercises over the work].) An "employee" performs services subject to the right of the employer to control both what shall be done and how it shall be done. In this case, the headhunters were performing a specific contractual service for a fee to Rockwell and had no control over which job candidates Rockwell chose to hire.

This court is not convinced that the relationship these headhunters had with Rockwell was anything more than an independent contractor, and as an independent agent without the authority to speak for Rockwell, the out-of-court statements are inadmissible hearsay. While Ms. Boardman acknowledged that the recruiters had a "longstanding relationship with Collins" (Tr. 37), Mr. Ally said between 1995 and 1997, the headhunters provided employment services for 1,500 different companies (Tr. 5), including Rockwell. Also, the plaintiff acknowledged that Mr. Ally and Mr. Rose were not employees of Rockwell.

From the plaintiff's deposition (Tr. 126–127):

Q. Do you believe they [Mr. Ally and Mr. Rose] were acting on behalf of Rockwell or do you attribute any of their actions in this recruiting activity in August of '96 to Rockwell?

A. They are acting on behalf of Rockwell, yes.

Q. As an independent contractor?

A. As a retained consultant.

Q. Which is normally a—

A. In their relationship they are—yes—they are independent, but they are working under a retainer agreement.

Q. Just as you did when you were a consultant?

A. Just as I did when I was a consultant and just as I negotiated with Sanford Rose Opportunity Centers when I was the staffing manager.

Q. Correct.

A. So they were acting on my behalf as an agent for my employer.

Q. Correct. And you were not an employee of Sanford Rose nor was Sanford Rose an employee of Rockwell.

A. They weren't employees, no.

Q. Nor was Dave Ally an employee of Rockwell.

A. No.

Q. When David Ally told you that Rockwell was looking—or that he

had another token position for you, you did not attribute that statement to Rockwell in any way, did you?

A. That was Dave Ally talking.

Q. That is David Ally as David Ally, not as Rockwell's agent?

A. That's right.

The out-of-court statements attributed to Mr. Ally and Mr. Rose are inadmissible hearsay, and the plaintiff has failed to offer any additional evidence of intentional discrimination against the defendant corporation. Therefore, the plaintiff's claim cannot go forward. The plaintiff offers no evidence of discrimination based on age, race or national origin (Tr. 11–12):

Q. Did you ever hear any racial slurs at all while you were employed at Rockwell?

A. Yes, I heard them in L.A.

Q. How about Collins Cedar Rapids?

A. Collins Cedar Rapids, no.

Q. Any racial profanity, inappropriate language of any sort regarding race, national origin or skin color?

A. Not to me directly, no.

\* \* \* \* \* \*

(Tr. 17–18):

Q. And the discrimination that you allege occurred at Rockwell when you arrived in Cedar Rapids was only in promotional opportunities, is that a fair statement?

A. That's correct.

Q. You did not perceive Rockwell to have a hostile work environment regarding race?

A. That is right.

Q. You did not perceive any or hear any profanities, racial profanities, racial epithets, any inappropriate language by anybody at Rockwell?

A. Directed at me?

Q. Correct.

A. That is correct.

\* \* \* \* \* \*

(Tr: 21):

Q. ... During the period of time that you were employed at Rockwell did you perceive any age discrimination on Rockwell's part or did you personally perceive any age discrimination?

A. No. At that time, no.

\* \* \* \* \* \*

(Tr: 85–86):

Q. And those were the exact words, "pissed somebody off?"

A. Those were the exact words.

Q. They did not say you pissed somebody off because you are black, right?

A. No, they did not.

Q. They did not say you pissed somebody off because you are over the age of forty?

A. No, they did not.

Finally, the plaintiff claims discrimination based on retaliation for his ex-wife's claim against Rockwell, and the plaintiff suggests this court follow the authority in *United States v. Portsmouth Paving Corp.*, 694 F.2d 312 (4th Cir.1982) (secretary deemed an agent of her boss and secretary's statement about what her boss had said was admissible evidence), and *Woodman v. Haemonetics Corp.*, 51 F.3d 1087 (1st Cir.) (mid-level employee overheard comments at a meeting, and those statements were admissible because they were overheard at a meeting which occurred within the scope of employment). However, this case is different and can be distinguished from those cases because the comments allegedly made by Mr. Ally and Mr. Ross to the plaintiff and attributed to Rockwell management were not made within the scope of any employer-employee relationship. As a result, the evidence of any discriminatory statements made by the headhunters is inadmissible hearsay.

The plaintiff offers no other evidence of discrimination based on retaliation, and plaintiff concedes that without the admissibility of these hearsay statements, the plaintiff cannot prove all the elements of his claim for discrimination and for retaliatory failure to hire.

## Conclusion

The plaintiff in this case makes four claims: discrimination based on age, race, national origin, and retaliation for Rockwell's failure to hire him in August 1996, May 1997 and April 1998. The August 1996 claim is barred by the statute of limitations. For the claims of failure to hire in May 1997 and April 1998, the plaintiff offers no evidence of discrimination based on age, race or national origin. He admits his resume distributed to Rockwell by Sanford Rose Associates in 1997 and by William Houze in 1998 made no reference to his birth date, race, or national origin. Also, Rockwell hired an African-American man for one human resources job in Cedar Rapids in 1998. The plaintiff has not met his burden to show that Rockwell's stated, non-discriminatory reasons for failing to hire the plaintiff were pretext for intentional discrimination based on age, race or national origin. The evidence offered by the plaintiff in his claim of failure-to-hire in retaliation for his ex-wife's lawsuit is inadmissible hearsay, and he offers nothing more to substantiate his claim. As a result, the defendant's motion for summary judgment must be granted.

## IT IS ORDERED

The defendant's January 14, 2000, motion for summary judgment (docket number 21) is granted. The Clerk of Court shall enter judgment for the defendant.