Nancy **KRATZER**, Plaintiff,

v.

Rockwell **COLLINS**, David A. **Bellendier, and Eugene R. Nedved, Defendants.**

No. C02–0110.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Dec. 8, 2003.

David A O'Brien, Willey, O'Brien, Mullin, Laverty & Hanrahan, LC, Cedar Rapids, IA, for Plaintiff.

Patrick John O'Connell, Wilford H Stone, Lynch, Dallas, Smith & Harman, PC, Cedar Rapids, IA, for Defendant.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the defendants' September 19, 2003, motion for summary judgment (docket number 22). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. For the reasons set forth below, the defendants' motion is granted.

### Statement of Material Facts Taken in a Light Most Favorable to the Plaintiff

Nancy Kratzer, a 54–year–old woman, brought this employment discrimination action against Rockwell International Corporation, a Delaware corporation with its avionics and communications business unit in Cedar Rapids, IA. The plaintiff claims that the defendants subjected her to sexual harassment and refused to allow her to train and test for a promotion commencing on or about May, 2000 to the present because of her age, sex, and disability status in violation of the Americans With Disabilities Act of 1990(ADA), Title VII of the Civil Rights Act of 1964 (Title VII), Age Discrimination in Employment Act (ADEA), and Iowa Code Chapter 216. The plaintiff also alleges that the defendants retaliated against her for filing her discrimination complaint.

The plaintiff has been employed by Rockwell Collins since July 20, 1972 and has worked in a number of positions. From September, 1997 until January 1, 2002, the plaintiff was employed as a sheet metal fabricator, working mostly as a "straightener" within the fabrication department. The plaintiff is a member of the International Brotherhood of Electrical Workers (IBEW) Local Number 1362.

Consequently, her employment with the defendants is subject to the terms of the union's collective bargaining agreement.

In 1994, the plaintiff suffered a work-related injury to her knee, resulting in work restrictions specifying that she could not sit for more than an hour without getting up periodically and should not use a foot pedal. To accommodate her work-related restrictions, the plaintiff obtained an electrical cart which the defendants permitted her to use to get from the parking lot to her work station and from her work station to the restroom. The defendants also allowed the plaintiff to use an adjustable chair and to lock it up during non-work hours to prevent use or tampering by other employees.

As a straightener, the plaintiff had a job classification of 407B. In April of 2000, the plaintiff pursued a promotion to a job classification of 408B. As a member of the IBEW 1362, the plaintiff had the right to seek training and testing for the 408B classification at any time. Pursuant to the collective bargaining agreement between IBEW 1362 and Rockwell, testing for union members seeking a 408B classification consists of passing both a written test and a four-part mechanical test. The mechanical portion of the promotion test requires employees to produce sheet metal parts on each of four different machines.

In the latter part of April, 2000, the plaintiff passed the written portion of the promotion test. Sometime in early May, 2000, the plaintiff notified Mr. Bellendier, Manager of Industrial Relations, that she wished to proceed with the mechanical portions of the test. The plaintiff also relayed to Mr. Bellendier that, due to her work-related restrictions, she could not train or test on the four machines without modifications. Mr. Bellendier scheduled a meeting, to be held at one of the four machines, for the purpose of discussing

with the plaintiff what potential modifications might be made to the machines to accommodate her restrictions so that she could train and test for the 408B classification.

The meeting was held on May 8, 2000. Present were the plaintiff, Mike Scott (Plaintiff's union representative), John Frasher (Plaintiff's union steward and safety representative), Charlotte DeSotel (Defendant's nursing department), Mr. Bellendier, Jacalyn Daboll (Defendant's human resources department), and Drew Bossen (Defendant's occupational ergonomics therapist). Mr. Bossen had worked with the plaintiff as she recovered from her knee injury, and as such, was familiar with the plaintiff's medical condition as documented in her medical file. Mr. Bossen suggested that the machine might be modified by moving the foot pedal to knee level so that the plaintiff could operate it without using her foot. The plaintiff indicated that such a modification would not adequately accommodate her restrictions. She went on to explain that she had additional restrictions which would require accommodations. These additional restrictions were in addition to those recorded in her medical file. The plaintiff expressed that she did not want to attempt to operate the machines until she had a new physical evaluation done and was confident that she could operate the machines without injuring herself. At the conclusion of the meeting, the plaintiff agreed that her restrictions needed to be updated, and that the necessary medical evaluation would be scheduled and paid for by the plaintiff. The plaintiff knew that she needed to see her doctor for this and claims she made such an appointment. The plaintiff's effort to avoid summary judgment on her disability claim hinges on her claim that Rockwell suddenly abandoned the concern of May 8, 2000 about accommodation. On or about June 6, 2000, Mr. Bellendier called the plaintiff into his office and told her that she had to pick a machine and test that very day.

At some time prior to and again on or about July 5, 2000, Mr. Scott and Ms. Daboll notified the plaintiff of the defendants' official position, that she could train and test for the 408B classification based on the physical restrictions then documented in her file with reasonable accommodations or she could obtain an updated restrictions evaluation at her own expense and initiative and test accordingly. The plaintiff did not provide an updated restrictions evaluation to the defendants until late in July, 2002.

Several other female employees have testified by affidavit that they experienced sex discrimination throughout their employment with the defendants. Six women testified to having been subjected to sexual harassment at unspecified times in the form of derogatory name-calling, staring, glaring, and intimidating speech or gesturing my male co-employees. Some of this testimony indicates that some male employees in the machine shop "routinely refer to the women using derogatory terms," such as "bitches," "sluts," "whores," and "cunts." The testimony of many of these women is that their complaints to management about the harassing behavior have gone unanswered. The plaintiff testified to learning of one derogatory comment in July, 2000, made by male co-employees, two months prior, which she perceived to be about her. Specifically, the plaintiff testified that one male employee stated to another, "they better not give her that labor grade 8" and called her a "fat whore and a fat fucking bitch." Upon learning of the comment, the plaintiff complained to management. In response to her complaint, management verbally warned the harasser, and the behavior has not recurred.

Three female employees, other than the plaintiff, have testified that they experienced varying impediments to completion of the testing process when seeking to train or test for promotions to 408B or higher classifications. Specifically, they complained of sabotage by male co-employees, being subjected to different testing procedures and rules for women, and management materially altering the written test approximately one-half hour before it was administered. A former business manager for the union testified by deposition that the vacancy announcement system appeared to be biased in that when a woman would be the next most qualified individual for a posted vacancy, the requisition "disappears for whatever reason."

Six female employees testified that on several occasions they have been subjected to unfair treatment based on their sex. The treatment complained of consists of male co-employees being allowed to take breaks but women being reprimanded for doing the same, only females being "farmed out" to other areas of work, and women being refused time on different machines to familiarize themselves and become more skilled. One co-employee testified that she heard Dave Behrens, a manager, state at a committee meeting that "whether we like the women in the machine shop or not, they are here so we have to deal with it."

On September 28, 2000, the plaintiff filed a complaint against the defendants with the Iowa Civil Rights Commission. As part of a company-wide reduction in force, the plaintiff was reduced by two pay grades and transferred out of the sheet metal fabrication department in January of 2002. On July 18, 2002, the plaintiff filed this discrimination claim against the defendants, amending her complaint on September 16, 2002 to include a claim of retaliation.

**Summary Judgment: The Standard**

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky,* 828 F.2d 461, 462 (8th Cir. 1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prod., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir. 1983)).

The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. *Sprenger v. Fed. Home Loan Bank of Des Moines,* 253 F.3d 1106, 1110 (8th Cir.2001). The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id.* Although it has been stated that summary judgment should seldom be granted in employment discrimination cases, summary

judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case. *Helfter v. UPS, Inc.,* 115 F.3d 613, 615–16 (8th Cir.1997). The standard for the plaintiff to survive summary judgment requires only that the plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions. *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1192 (8th Cir.1995). To avoid summary judgment, the plaintiff's evidence must show that the stated reasons were not the real reasons for the plaintiff's discharge and that sex or other prohibited discrimination was the real reason for the plaintiff's discharge. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting the district court's jury instructions).

## Conclusions of Law

The plaintiff joins together four claims of discrimination by the defendants. She contends that the decision not to promote her was based on discrimination because of her age, sex, and disability. The plaintiff further contends that the defendants engaged in retaliation against her. All of the plaintiff's claims grow out of her unsuccessful attempt to train and test for a promotion from her 407B job classification to a classification of 408B in April and May, 2000.

## Disability Discrimination

■ To present a prima facie case of discrimination based on disability under the Americans with Disabilities Act, a plaintiff must show the following:

(1) she is a 'disabled' person within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job (either with or without reasonable accommodation); and (3) she has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. *Valentine v. American Home Shield Corporation,* 939 F.Supp. 1376, 1396–97 (N.D.Iowa 1996) (citing *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311,1318 (8th Cir.1996)). The Eighth Circuit Court of Appeals has formulated a two pronged test of whether a person is "qualified" within the meaning of the ADA:

(1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation.

*Valentine v. American Home Shield Corporation,* 939 F.Supp. 1376, 1394 (N.D.Iowa 1996) (citing 42 U.S.C. § 12111(8), 29 C.F.R. § 1630.2(m) (1994)). The ADA's prohibition against discrimination based on disability extends not only to denial of employment opportunities based on vocationally irrelevant disabilities, but extends to discrimination based on disabilities that impair the individual's ability to perform her job. *Vande Zande v. State of Wisconsin Dept. of Admin.,* 44 F.3d 538, 541 (7th Cir.1995). Consequently, an employer is implicated under the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]." *Beck v. University of Wisconsin Board of Regents,* 75 F.3d 1130, 1134 (7th Cir.1996) citing 42 U.S.C. § 12112(b)(5)(A). If a plaintiff proves a prima facie case of disability discrimination, an inference of discrimination arises. See Valentine, 939 F.Supp. at 1397. The burden of production then

shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for its actions. *Id.* (citing *Price v. S–B Power Tool,* 75 F.3d 362, 365 (8th Cir. 1996)). Finally, the burden then shifts back to the plaintiff to prove that the defendant's proffered reason is pretext and that intentional discrimination was the true reason for the defendant's actions. *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

The record contains undisputed evidence that the plaintiff was unable to perform the essential functions of the 408B position without accommodations. *Moore v. Payless Shoe Source, Inc.,* 187 F.3d 845, 848 (8th Cir.1999). At the May 8, 2000 meeting, the plaintiff further stated that she could not perform the functions even with the suggested accommodations because of additional disabilities. Thus, the issue is whether the defendants failed to make reasonable accommodations to the known limitations of the plaintiff, so that she could perform the essential functions of the 408B position.

■ Before deciding to not promote the plaintiff, the defendants must consider whether reasonable accommodations can be made for her disability. Generally, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed. See *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155 (5th Cir.1996). "Once such a request has been made, 'the appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability.'" *Id.* (citing 29 C.F.R. § 1630.9, App. (1995)).

■ The record clearly illustrates that the interactive process between the plaintiff and the defendants broke down. There is no hard and fast rule assigning responsibility for when the interactive process fails. *Beck v. University of Wisconsin Board of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996). Courts "should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Id.* The employer may not know enough about the individual's disability or the limitations that disability would impose on the performance of the job to suggest an appropriate accommodation. *Id.* at 1136. Specifically, information concerning the plaintiff's medical condition and the nature of appropriate work restrictions is often uniquely available to the plaintiff. *Gerdes v. Swift–Eckrich, Inc.,* 949 F.Supp. 1386, 1406 (N.D.Iowa 1996).

At the time of the May 8, 2000 meeting, the defendants hypothesized possible accommodations based on the restrictions documented in the plaintiff's medical file. The plaintiff concedes that she was unsatisfied with the proffered accommodations, and knew that the promotion testing process could not move forward until her work-related restrictions were updated. The defendants initially requested updated restrictions in early May, 2000. The plaintiff did not advise the defendants of what accommodations specific to the 408B position and workplace were needed, until late July, 2002. The defendants made reasonable efforts to determine the appropriate accommodation by regularly requesting information about or clarification of the plaintiff's work restrictions. Because the plaintiff did not provide her updated restrictions, the defendants never knew exactly what action they needed to take. The ball was in the plaintiff's court, and she simply dropped it.

The court accepts as true that there was a demand by Defendant Bellendier in June of 2000 that the plaintiff train and test immediately without modifications but that

did not excuse the plaintiff's responsibility to the interactive process. According to her testimony, the plaintiff understood that "the one thing that had to take place before these accommodations could be made, if at all, was for [her] to update [her] restrictions so that [the defendants] knew what they were[.]" The plaintiff has also acknowledged that she received communication from Mike Scott after the alleged demand, indicating that Rockwell's continuing position was that the plaintiff needed to update her work restrictions before training and testing. The reasons the plaintiff has given for not updating her restrictions are that she had filed a civil rights suit and that at some point, she was of the understanding that Dave Behrens "would take [her] as she [was]." The plaintiff's failure to update her work restrictions halted the interactive process. Accordingly, the plaintiff is responsible for the inability of the defendants to identify adequate accommodations for the plaintiff to train and test for the 408B classification promotion.

### Age and Sex Discrimination

■ The plaintiff does not resist the defendant's motion for summary judgment as to her claim of age discrimination. In order to move forward with her claim of sex discrimination, the plaintiff first must establish a prima facie case under Title VII for discriminatory failure to promote. See *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must show that (1) she is a member of a protected class; (2) that she was qualified and applied for a promotion to an available position; (3) that despite her qualifications, she was rejected; and (4) that a similarly situated employee, not part of the protected group, was promoted instead. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002).

■ Under McDonnell Douglas, if the plaintiff produces sufficient evidence from which a reasonable trier of fact could find elements of her prima facie case, the burden of production shifts to the defendants to articulate a legitimate, non-discriminatory reason for its decision not to promote the plaintiff. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. Then, if the defendants meet their burden, the plaintiff must produce sufficient evidence from which a reasonable trier of fact could find the defendants' explanation to be pretext, and the real reason for their failure to promote the plaintiff was intentional discrimination. See *Id.* at 804, 93 S.Ct. 1817. "[If] the plaintiff cannot show that that reason was pretext, the defendants are entitled to summary judgment." *Horton v. Rockwell International Corporation*, 93 F.Supp.2d 1048, 1052 (N.D.Iowa 2000) (citing *Thomas v. St. Lukes Health Systems, Inc.*, 869 F.Supp. 1413 (N.D.Iowa 1994)).

The plaintiff, a woman, is a member of a protected class. The defendants argue, however, that the plaintiff was not qualified for the 408B classification promotion because she did not take and pass the mechanical portion of the promotion test. It is undisputed that the plaintiff was, in fact, not qualified for the promoted position because she did not take and pass mechanical tests. However, the plaintiff claims that she was estopped from continuing the testing process by Defendant Bellendier's demand that she test without modifications. For purposes of summary judgment, it is assumed that the plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether she was qualified but for Defendant Bellendier's alleged interference with the testing process. See *Austin v. Minnesota Min. & Mfg. Co.*, 193 F.3d 992, 995 (8th Cir.1999). "The trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and

determine the truth of the matter, but to determine whether there are genuine issues for trial." *Bauer,* 59 F.Supp.2d at 908.

 It is undisputed that the plaintiff was not promoted to a 408B classification. It appears from the record that the next individual to be promoted to a 408B classification was a male employee. The plaintiff has satisfied her prima facie burden.

 The defendants assert that their decision to not promote the plaintiff resulted solely from her failure to update her work-related restrictions so that a determination of reasonable accommodations could be made. The plaintiff's deposition testimony indicates that she understood that she must update her work-related restrictions. Thus, her failure to provide updated restrictions is an articulated non-discriminatory reason for not promoting the plaintiff. See *Id.* at 908–09.

The plaintiff contends that the defendants' proffered reason for not promoting her, when evaluated in light of other evidence, is pretextual. Specifically, the plaintiff asserts that "there is a significant history of impediments being place[d] in the way of women seeking advancement." These impediments, as discussed in the "statement of material facts," include allegations of sabotage by male co-employees and some members of management in the mechanical testing process.

The plaintiff has not argued, and from the facts it cannot reasonably be inferred, that the defendants' act of requiring the plaintiff to update her work restrictions is evidence of pretext. Rather, she contends that pretext is established by evidence that Defendant Bellendier demanded that the plaintiff train and test immediately without modifications. However, as previously discussed, the plaintiff concedes that she was made aware, even after Defendant Bellendier's demand, of the defendants' continued position that she update her work restrictions before moving forward with the testing process. The plaintiff knew that in order to be promoted, she would need to provide her work-related restrictions. A plaintiff who unilaterally decides, for whatever reason, that the employer is not genuinely concerned about accommodating a disability cannot just abandon the process and later claim that it was not going to work. The plaintiff has failed to demonstrate that the defendants' legitimate non-discriminatory reason for refusing to promote her is pretextual.

### Sexual Harassment

 For the plaintiff to establish a prima facie case of sexual harassment based on a hostile environment created by co-workers, she must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993) (quoting *Burns v. McGregor Electronic Indus., Inc.,* 955 F.2d 559, 564 (8th Cir.1992)). The fifth element of the prima facie case of hostile environment requires a showing that the defendant knew or should have known of the harassment and failed to take proper remedial action. *Kopp,* 13 F.3d at 269.

 As set forth in the statement of material facts, several female co-workers testified that some of the male employees in the machine shop "routinely refer to the women using derogatory terms," such as "bitches," "sluts," "whores," and "cunts," and that management has consistently failed to address this behavior. According to the affidavits of these female employees, the comments and inaction have been "going on for years." The plaintiff testified

that she has heard a male co-employee refer to two female co-employees as "bitches." She also testified, as discussed in the statement of material facts, to having learned of one comment about her made by a male co-employee. The plaintiff complained to management about this comment, management reprimanded the offender, and it did not happen again.

The plaintiff has failed to establish that the above-described acts affected a term, condition, or privilege of her employment. The requirement has both objective and subjective prongs, and the offensive situation must offend a reasonable person as well as the plaintiff herself. *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 (8th Cir.1999). To be considered sexual harassment, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Cherry v. Menard*, 101 F.Supp.2d 1160, 1169 (N.D.Iowa 2000).

Whether the employment environment was objectively offensive or not, the plaintiff testified that she did not feel harassed by any of the comments she was personally aware of. The plaintiff did not claim to have heard the harassing comments attested to by her female co-employees. Consequently, it is unclear as to how her terms of employment were affected by the harassing comments attested to by the other female co-employees that she did not hear. She has not claimed or demonstrated that any conduct has detracted from her job performance, discouraged her from remaining on the job, or kept her from advancing her career. See *Smith v. St. Louis University*, 109 F.3d 1261, 1265 (8th Cir.1997).

Further, once the plaintiff learned of the comment about her, she immediately complained to management, and there has not been a recurrence. The plaintiff put the defendants on notice as to the objectionable behavior, and the defendants took remedial action which was reasonably calculated to end the harassment. See *Hathaway v. Runyon*, 132 F.3d 1214, 1223–24 (8th Cir.1997).

### Retaliation

 To establish a prima facie case of retaliation, a plaintiff must show that she engaged in a statutorily protected activity, that the defendant took adverse action against her, and a causal connection between the two. *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997). Once this showing is made, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its actions." *Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir.1997).

The plaintiff alleges that the defendants retaliated against her by (1) reducing her classification as part of a company-wide reduction in force; (2) offering training and testing to the plaintiff in exchange for dismissal of her civil rights claim; and (3) allowing co-employees and a supervisory employee to stare and glare at her after she filed her civil rights claim.

 First, the plaintiff contends that if she had been promoted to a 408B classification, she would have been insulated from the company-wide reduction in force. The plaintiff's claim is not that the filing of her civil rights suit subjected her to demotion, but rather that she was in a position to be demoted because the defendants' failed to promote her. For the plaintiff to have a cognizable retaliation claim she must demonstrate that her protected activity, the filing of her civil rights action, caused her demotion. Further, the company-wide reduction in force occurred approximately one and one-half years after the plaintiff filed her civil rights complaint.

Such a remote temporal connection, without more, is not sufficient to state a claim for retaliation. See *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999). The plaintiff has not attempted to prove that the reduction in force was a pretext for discrimination.

Similarly, the plaintiff has not demonstrated how the April, 2002 offer of training and testing for the promoted position in exchange for the dismissal of her civil rights suit qualifies as retaliation. The plaintiff claims that the defendants' offer is evidence of retaliation because it did not allow for adequate time to train and test for the promotion. The defendants' offer appears to fit squarely within the definition of an "effort to compromise a claim," under Federal Rule of Evidence 408. Moreover, at the time of the settlement offer, the plaintiff was no longer classified as a 407B employee and accordingly, was not entitled to test for the promotion. Therefore, it was permissible for the defendants to offer to allow her to train and test for the position in exchange for settling her civil rights claim, and in so doing, they were not taking an adverse employment action against her. Regardless of whether the terms of the settlement agreement were satisfactory to the plaintiff, the settlement offer is not evidence of retaliation.

Likewise, the plaintiff has failed to demonstrate that co-employees and a supervisor staring or glaring at her had any relationship to her civil rights complaint other than that they occurred after she filed her complaint. Furthermore, "a general lack of friendliness or camaraderie in the workplace by coworkers cannot, as a matter of law, constitute a material adverse employment action." *Doyle v. Tama County,* 1999 WL 33655734 (N.D.Iowa March 16, 1999).

Upon the foregoing,

IT IS ORDERED

Defendant's motion for summary judgment is granted. This matter is dismissed. The Clerk of Court shall enter judgment for the defendants.